# Wright's Ex'r v. Craft.

January 18, 1949.

John B. Rodes and G. D. Milliken, Jr. for appellant.

Rodes K. Myers, Leland Logan, August Winkenhofer, Jr., and Wilber Bilyeu for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This suit was brought by Ivy Craft, appellee, against the appellant for services claimed to have been rendered by her to Willis Wright, deceased, from October 1, 1945, to the date of his death on April 25, 1946. According to the petition, the services consisted of attending decedent as a practical nurse and assisting in washing, ironing, carrying out the household duties, bringing in vegetables, milk and other food and performing other necessary duties for the sick man. The petition alleges that these services were rendered at the instance and request of the deceased and he promised and agreed to pay the reasonable value of said services which she says was $3.50 per day or a total of $755.50, the amount.

prayed for in her petition. The answer, denying the allegations of the petition, made up the issue and on trial of the case, the jury rendered a verdict for appellee in the sum of $500.00. This appeal is prosecuted from the judgment based on that verdict.

## Grounds for Reversal

Reversal is sought on four grounds: (1) the verdict is not sustained by the evidence; (2) the verdict is excessive and the result of passion and prejudice; (3) improper argument of counsel; (4) lower court erred in permitting appellee's husband to dismiss his companion case without prejudice after it had been consolidated with this case.

## Facts in the Case

At the time of his death Willis Wright owned a small farm near Greenwood in Warren County and also a four and one half acre plot of ground at Greenwood. About October 19, 1945, he moved from his farm to his place at Greenwood and at about the same time appellee, Ivy Craft, and her husband, Silva Craft, who had been tenants of Mr. Wright for about fourteen years, moved to the farm house which had been vacated by Mr. Wright. Shortly after moving to his Greenwood house, Mr. Wright began to suffer with an infection of the eye and the infection spread to his left lung and was diagnosed as cancer. He became bedfast early in Decemberber 1945, and continued so almost continually until his death at the age of 83 on April 25, 1946. During all this period, except for about three weeks in February when he got better for a time, he was constantly attended by a practical nurse, Mrs. Valia Brown, who was paid $12.00 per day for most of the time and $10.00 per day for part of the time. During the last nine weeks of his life, deceased was also attended by one Lott Jones as a night nurse, who was paid $4.00 per night for his services. Mrs. Shelley Wright, wife of decedent, his second wife and much younger than he, was also in constant attendance and did most of the family cooking and household duties during this period. Roy Gum, appellant, and nephew of deceased, also assisted in many ways to make his uncle as comfortable as possible in his last illness. During his illness deceased was under the regular care of Dr. G. H. Freeman.

Appellant argues strongly that since deceased, during his last illness, was amply taken care of by persons referred to above, there were few services which appellee could have performed for him and any services which she might have rendered are minimized as only such as she should have performed as the long time tenant of deceased. These are arguments that might well have been presented to the jury, as no doubt they were, but are not necessarily such as concern us as a reviewing court. It is not our duty to judge the weight and credibility of the evidence but only to review it and say whether there was sufficient evidence of probative value to take the case to the jury and sustain its verdict.

## Appellee's Proof

According to appellee's testimony, given without objection from appellant and brought out mostly on cross-examination, her services to decedent consisted principally in milking his cow and bringing the milk daily to him from the farm to his home in town, bringing groceries and vegetables from the store to his home, giving him medicine when nobody else could get him to take it, feeding him at times, washing his face and feet at times, helping attend to his bed, doing some of the cooking, bringing in the fuel, gathering the eggs, helping Mrs. Wright with the washing and anything else that was to be done around his place. Part of these services were performed before the regular nurse came on the job and during the three weeks that the nurse was off the job when deceased got better temporarily. She testified that these services were worth $3.50 per day.

Plaintiff's testimony was corroborated by the testimony of Mrs. Shelly Wright, widow of deceased, who testified that appellee assisted in the work about the place during the illness of Mr. Wright; that Mrs. Craft was at his home most every day, sometimes two or three times a day, that she helped in every way she could and she didn't know what she would have done without her help; that she helped iron, clean house, helped in the hog killing, helped fire the furnace, fed the chickens, shaved Mr. Wright, waited on both her and Mr. Wright while Mrs. Wright was ill with flu for about three weeks during this period, helped her fix Mr. Wright's meals at other times and other things necessary to be done

around the place. She testified that she had heard Mr. Wright ask Mrs. Craft to come and help him and his wife during his illness and he would pay her well. She estimated the value of appellee's services, based on her experience in such matters and what was paid to others, as being about $6.00 per day.

Mrs. Brown, the practical nurse who waited on deceased during his illness and who was in position to know and who was apparently a disinterested witness, testified that Mrs. Craft, appellee, was at the Wright home frequently during his illness doing everything necessary to be done such as helping her in her duties as nurse, feeding him when he would take his food from no one else, shaving him when needed, giving him medicine, helping raise Mr. Wright, who was a large man, up in bed, changing his bed, bringing in the milk, butter and groceries, helping with chickens, with the washing, with the cleaning, with the furnace and many other things that were necessary around the place; that she heard Mr. Wright tell Mrs. Craft and her husband that he wanted them to do everything that was necessary and when he got well he would see that they were well paid for what they had done. She estimated the value of appellee's services at from $3.00 to $4.00 per day.

Some nine or ten other witnesses testified for appellee confirming in some measure some of the testimony given above by the principal witnesses above as to certain services they had seen appellee perform for decedent during their visits to him. We think it unnecessary to summarize all this additional evidence.

### Appellant's Proof

Appellant introduced four witnesses; Mrs. Gum, wife of appellant, who testified that she heard Mrs. Craft say that what she did for Mr. Wright she did because she wanted to and would do it again; Dr. Callis, a druggist, who testified that during all the period of Mr. Wright's illness, Mr. Gum came to his store to get the medicine for him and that to his knowledge Mrs. Craft came only once during that period; Lott Jones, who acted as night nurse during the last two months of decedent's illness, testified that Mrs. Craft had never stayed at the house at night while he was there, that he had never seen her helping around except to get Mr.

Wright a glass of water sometimes and bring the milk from the farm to the house at night; that he had no opportunity to observe what she may have done during the day. Mr. Gum, appellant, was the principal witness for the defense and his testimony was contradictory of that given by appellee's witnesses and was to the effect that services performed by appellee consisted largely of bringing the milk to the Wright home at night, perhaps performing some small chore while she was there and that her services to decedent were unnecessary and of no consequence.

### Evidence Sustains Verdict

From this resume of the testimony, it will be seen that the evidence was not only sufficient to take the case to the jury but to sustain the verdict and to indicate that the verdict was not excessive nor the result of passion and prejudice. Appellant argues in his brief that in her claim against decedent's estate, appellee is actuated by greed and that the motivating force behind the whole suit was the encouragement of Mrs. Wright, widow of decedent, who bore malice and extreme animosity toward appellant, Roy Gum, nephew of decedent. Again we say that was good argument to use before a jury but it is not ground for reversal since these things are not shown in the record before us.

### Improper Argument

In his final argument before the jury, appellee's attorney made the statement that "Willis Wright did not die a poor man." Objection was made to this statement but the objection was overruled. In his brief appellant says that the court failed to admonish the jury although the bill of exceptions does not so show. We think such statement was improper since the relative economic status of litigants has no proper place in cases of this character. The court should have admonished the jury not to consider such statement. However, we do not regard this statement of sufficient importance or that it was so prejudicial to appellant's case as to justify a reversal on that ground.

### Consolidation of Suits

There were two companion suits for services filed against decedent's estate, this suit by appellee and a

similar suit by her husband, Silva Craft. On motion of the defendant, these two suits were ordered consolidated by the court. Plaintiffs objected to this order of consolidation and upon its entry, Silva Craft dismissed his suit without prejudice over objection of defendant. Appellant now contends that once these suits were consolidated by order of court, they could not legally be severed and the court erred in allowing one of the consolidated cases to be dismissed without prejudice. We do not think this position is well taken. Although Iva Craft and Silva Craft were husband and wife, their causes of action were separate and may have been for different types of services even though against the same estate. They might well have been consolidated or tried together in the discretion of the court even though their suits were separate and distinct and their situation different from that in which two persons are injured in the same accident. We think the order of consolidation did not bar one of the plaintiffs from dismissing his separate suit without prejudice, even though the dismissal was for the purpose of again bringing the suit separately to avoid consolidation or trial together. Even if such plea in bar might be raised against a subsequent suit filed by the one who dismissed without prejudice, it could have no effect on this suit which proceeded to trial separately. Certainly it would not be ground for reversal of this suit. The cases of Ross v. Fox's Adm'r, 212 Ky. 838, 280 S. W. 143, Wintuska v. Peart, 237 Ky. 666, 36 S. W. 2d 50, and Wiman v. First Christian Church, 273 Ky. 821, 117 S. W. 2d 989, cited and relied on by appellant, are not in point and involve entirely different factual situations from those involved in this case.

## Conclusion

Finding no substantial error prejudicial to appellant, the judgment of the lower court is affirmed.

Judgment affirmed.